IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEWART LAWSON,                          :

    Plaintiff,                        :

                                    Case No. 3:07cv196

        vs.                            :

                                      JUDGE WALTER HERBERT RICE

JACKSON TOWNSHIP, *et al.*,               :

    Defendants.                       :

---

DECISION AND ENTRY OVERRULING, IN PART, AND SUSTAINING,
IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC.
#11); OVERRULING PLAINTIFF'S MOTION TO DEEM REQUESTS FOR
ADMISSIONS ADMITTED (DOC. #12); OVERRULING, WITHOUT
PREJUDICE TO RENEWAL, PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (DOC. #12); AND SUSTAINING
DEFENDANTS' MOTION TO DEEM RESPONSES TO PLAINTIFF'S
REQUESTS FOR ADMISSION AS TIMELY SERVED (DOC. #14)

---

       The Plaintiff, Stewart Lawson, arrived at his home to see it engulfed in

flames and surrounded by emergency personnel and equipment.  Fearing for the

safety of his daughter, whom he believed to be inside the home, Lawson

approached the burning building.  His progress was halted by Defendants Eli

Winkler and Jon Schade,[1] law enforcement officers employed by Defendant Jackson Township. A physical altercation ensued. Lawson then commenced the present litigation.

Lawson brings six claims against Defendants Winkler and Schade, to wit: (1) intentional or malicious threat to inflict bodily harm (Assault and Battery - Count I); (2) intentional or malicious use of excessive force (Assault and Battery - Count II); (3) use of excessive force, in violation of the Fourth Amendment (Excessive Force - Count III); (4) intentional, willful or deliberate disregard of Constitutional rights, in violation of the substantive due process clause of the Fourteenth Amendment (Substantive Due Process - Count IV); (5) infliction of cruel and unusual punishment (Cruel and Unusual Punishment - Count V); and (6) intentional, reckless or negligent infliction of severe emotional distress (Intentional/Reckless or Negligent Infliction of Emotional Distress - Count VI). Doc. #2 (Compl.). Lawson also brings Counts III-VI against Defendant Jackson Township and Jackson Township Chief of Police, Defendant Wayne E. Turner. Id.

The Defendants move for summary judgment on all of the Plaintiff's claims. Doc. #11.[2] The Plaintiff moves to have certain requests for admissions, which the

---

[1] The Plaintiff spells Defendant Schade's name both "Shade" and "Schade". E.g., Doc. #2 (Compl.) ¶ 3. The Court will use the spelling adopted by the Defendants, "Schade".

[2] Although the Defendants purport to move for summary judgment on all claims, they actually do not address the Plaintiff's claim for Negligent Infliction of Emotional Distress, which the Court will further address herein.

Defendants answered outside the time period specified in Federal Rule of Civil Procedure 36, deemed to be admitted. Doc. #12. Based on those deemed admissions, the Plaintiff moves for summary judgment as to the claims against Defendants Schade and Winkler. Id. As to these deemed admissions, the Defendants move the Court to consider their untimely response to the requests for admissions to be deemed timely. Doc. #14. The Court will first set forth the facts and will then consider the parties' Motions in reverse order.

I.    FACTS[3]

As background information, Lawson shares his home, which is contained within the church where he is a pastor, with his daughter, Tamara, and her three children. Doc. #16, Attach. #6 (T. Lawson Test.) at 2, 18. As to Lawson's physical condition, he has bad knees and does not move very fast. Doc. #16, Attach. #5 (Isaacs Test.) at 13, 29-30.

With regard to the events in question in this litigation, on April 25, 2006, Tamara was in the home while her children were at school. Doc. #16, Attach. #6 (T. Lawson Test.) at 2-3. While running errands that morning, Lawson received

_____

[3]Both parties have moved for summary judgment. When ruling on the Plaintiff's Motion, the Court will consider the facts and circumstances giving rise to such Motion in the manner most favorable to the Defendants, as the party against whom the Motion is directed and, conversely, when ruling on the Defendants' Motion, the Court will consider the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

two phone calls from Tamara informing him that their home and the church were on fire. Id. at 5-6. Their second phone call ended abruptly when Tamara's phone died. Id. at 6-7.

Shortly thereafter, Lawson arrived home to see his church and home engulfed in flames and his property covered with vehicles and emergency personnel. Doc. #16, Attach. #2 (Wallace Test.) at 6; Doc. #16, Attach. #7 (S. Lawson Test.) at 4-5. Lawson feared for the safety of his daughter, thinking she was still in the burning building. Doc. #16, Attach. #7 (S. Lawson Test.) at 4. Lawson questioned several people about the whereabouts of his daughter; they were unresponsive and he feared they were withholding information from him. Id. at 4-6. At some time while searching for his daughter, Lawson heard a tremendous noise and was told the gas line in the building had ruptured. Id. at 6. At this point, out of fear for his daughter's safety, he began walking towards the fire. Id. at 7. Both Defendant Schade and Defendant Winkler requested that Lawson stop. Doc. #11, Attach. #2 (Schade Aff.) ¶ 6; Doc. #11, Attach. #3 (Winkler Aff.) ¶ 7. He continued walking,[4] however, and when he was approximately a third of the distance of a football field away from the fire, his progress was halted. Doc. #16, Attach. #3 (Winkler Test.) at 9. The Plaintiff describes this event as follows:

---

[4]Officers Schade and Winkler testified that Lawson began running toward the fire after they asked him to stop. Doc. #11, Attach. #2 (Schade Aff.) ¶ 7; Doc. #11, Attach. #3 (Winkler Aff.) ¶ 7. The Plaintiff has offered the testimony of Michael Isaacs, an eye witness to the event, however, that indicates that he did not run. Doc. #16, Attach. #5 (Isaacs Test.) at 8.

[Mr. Lawson] was hit violently and brought down to the ground.  The
blow to his body knocked the wind out of him.  People began yelling,
his arm was forced behind his back, and a knee was pressed into his
spine.  Mr. Lawson was enduring severe pain.

Mr. Lawson did not know exactly how long he was on the ground
with the police officers on top of him; he only knew it seemed like
forever.  It was actually approximately twenty minutes.  The men
would not let him up or ease their restraint.  They continually pushed
his face into the ground. . . . .

The first time Mr. Lawson knew his daughter was alive was when he
heard her voice calling to him.  At that moment, and not a moment
before, he knew his daughter was ok.

Mr. Lawson, along with his daughter, begged the officers to let him
up.  He told the officers that he knew his daughter was ok. . . .

When [Tamara] approached her father, he told her, I am so glad that
you are all right.  I was scared to death. . . .  No one told me that you
were all right.  No one would tell me anything. . . .

Tamara once again pled with the officers to let her father get up off
of the ground.  She could see that her father was in pain.  She witnessed
his hand turning black and purple due to his arm being wrenched
behind his back.  After quite some time, Mr. Lawson was picked up
off of the ground and assisted back to the road.  He was then placed
in the back of a police vehicle.

Doc. #16 (Pl.'s Mem. Opp'n) at 6-8 (citing Doc. #16, Attach. #5 (Isaacs Test.) at

12; Doc. #16, Attach. #6 (T. Lawson Test.) at 11, 13, 20; Doc. #16, Attach. #7

(S. Lawson Test.) at 7-8)).  Tamara was with her father for ten of the twenty

minutes the officers held him on the ground, and during those ten minutes he

offered no resistance. Doc. #16, Attach. #6 (T. Lawson Test.) at 12-13.

As to the beginning of this incident, the Defendants offer evidence to support the following additional information, which is not controverted by the Plaintiff:[5]

> [After requesting that Lawson stop moving toward the fire,] Defective Winkler caught up [with] Plaintiff [and] wrapped his arms around Plaintiff, but Plaintiff threw his arms in the air. As a result, Detective Winkler tightened his grip around Plaintiff, and both individuals fell to the ground.

Doc. #11 at 3 (citing Doc. #11, Attach. #3 (Winkler Aff.) ¶ 8).[6]

When sitting in the police vehicle after the altercation, Lawson began feeling ill. Doc. #16, Attach. #7 (S. Lawson Test.) at 8. He caught the attention of Defendant Winkler to tell him, and Winkler said, "you SOB, if you throw up in my cruiser it'll be the last cruiser you throw up in." Id. at 9. At some point in time,

---

[5]In his brief, the Plaintiff begins his story only at the point in time when he is knocked to the ground, which leaves open the time period between his hitting the ground and the officers previously ordering him to stop, during which time the Defendants argue that Winkler wrapped his arms around the Plaintiff and the Plaintiff threw his arms into the air. Because the Defendants point out their version of the facts first (Doc. #11 at 3) and the Plaintiff does not provide a differing version of this particular piece of the story in his subsequent brief, the Court concludes that the Defendants' version of the story is uncontroverted.

[6]The Defendants also point to evidence that indicates that Lawson struggled with the officers the entire time they had him on the ground and, as soon as he calmed down, they permitted him to stand up. Doc. #11 at 3-4 (citing Doc. #11, Attach. #2 (Schade Aff.) ¶ 9-11; Doc. #11, Attach. #3 (Winkler Aff.) ¶¶ 8-11). The Court recognizes that the Plaintiff has not put forth evidence to cover the issue of his resistance in the ten minutes before Tamara arrived at the scene, but it cannot fairly interpret the Defendants' testimony such that it applies only to the first ten minute period. There being contradictory evidence on this point and the Court being obliged to interpret the facts in the manner most favorable to the Plaintiff, the Court will not consider the Defendants' testimony, on this issue.

Lawson got out of Winkler's vehicle and into another police vehicle, at which time he passed out. Id. at 9. He woke up several days later in the hospital. Id. at 9-10.

Jackson Township eventually charged Lawson with Misconduct at an Emergency, which is made criminal by Ohio Revised Code § 2917.13.[7] Doc. #11, Attach. #4 (Montgomery Cty. Court Sentencing Entry). Subsequently, Lawson either pled or was found guilty of that offense. Id.

## II.    DEEMED ADMISSIONS; FEDERAL RULE OF CIVIL PROCEDURE 36

The Court sets forth the following chronology of events, as background to the Defendants' Motion to Deem Responses to Plaintiff's Requests for Admission

_____

[7]Ohio Revised Code § 2917.13 forbids a person from knowingly doing any of the following:

(1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person, engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind;

(2) Hamper the lawful activities of any emergency facility person who is engaged in the person's duties in an emergency facility;

(3) Fail to obey the lawful order of any law enforcement officer engaged in the law enforcement officer's duties at the scene of or in connection with a fire, accident, disaster, riot, or emergency of any kind.

Ohio Rev. Code Ann. § 2917.13(A). The evidence on the record in this case does not indicate for which of the three kinds of misconduct Lawson was found guilty. See Doc. #11, Attach. #4 (Montgomery Cty. Court Sentencing Entry) (noting only that Lawson had "pled or been found guilty of the offense(s) of 2917.13 Misconduct at an Emergency").

as Timely Served (Doc. #14) and the Plaintiff's Motion to Deem Requests for Admissions Admitted (Doc. #12). The Plaintiff served Defendant Jackson Township with a request for admissions, on October 25, 2007. Doc. #12 at 13-21 (Ex. 1). Defendant Jackson Township did not serve an answer to the request until December 10, 2007. Doc. #14, Ex. A. Discovery in this litigation closed on June 5, 2008. Doc. #8. On July 21, 2008, the Plaintiff filed his Motion to Deem Requests for Admissions Admitted (along with his Motion for Partial Summary Judgment, based on these deemed admissions). Doc. #12. The Defendants responded, on August 18, 2008, by filing a Motion to Deem Responses to Plaintiff's Requests for Admission as Timely Served. Doc. #14.


A.    Law

Federal Rule of Civil Procedure 36 governs Requests for Admissions. That Rule provides that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ." Fed. R. Civ. Proc. 36(a)(1). The Rule further states that,

> [a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. . . .

Fed. R. Civ. Proc. 36(a)(3). As to a matter that Rule 36(a) deems admitted, any such matter "is conclusively established[8] unless the court, on motion, permits the admission to be withdrawn or amended," which the court may permit "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b); see also Kerry Steel, Inc. v. Paragon Indus., 106 F.3d 147, 153 (6th Cir. 1997) ("Under Rule 36(b), Fed. R. Civ. P., a request for admissions which is not responded to within the applicable time period 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission.'").

In an unpublished opinion, the Sixth Circuit explains that "[t]he first prong of the test articulated in Rule 36(b) is satisfied 'when upholding the admission would practically eliminate any presentation on the merits of the case.'" Riley v. Kurtz, No. 98-1077, 1999 U.S. App. LEXIS 24341, at *7 (6th Cir. Sept. 28, 1999) (citing Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995) (holding that the district court abused its discretion in refusing to allow the withdrawal of two inadvertent admissions that went to the heart of the case)); see also Dynasty Apparel Indus. v. Rentz, 206 F.R.D. 596, 602 (S.D. Ohio 2001) (applying same

---

[8]The Court notes that untimely responses are automatically deemed admitted by operation of Rule 36(a), thus seemingly making the Plaintiff's Motion to Deem Requests for Admissions Admitted (Doc. #12) unnecessary. The Court will nevertheless address the Motion, given the related dispute regarding the Defendants' Motion to Deem Responses to Plaintiff's Requests for Admission as Timely Served (Doc. #14).

standard).  As to the second prong of the test, "'the prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth,' [but instead], prejudice under Rule 36(b) 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" Riley, 1999 U.S. App. LEXIS 24341, at *7 (quoting Kerry Steel, Inc. v. Paragon Indus., 106 F.3d 147, 154 (6th Cir. 1997)).  "By the terms of Rule 36(b) itself, the burden [is on the opposing party] to demonstrate that he would be prejudiced if the district court allow[s] the withdrawal. Id. at **7-8 (citing Fed. R. Civ. P. 36(b)).

B.    Application of Law to Facts

In applying Rule 36(b), the Court must initially determine whether permitting the Defendants to withdraw the deemed admissions would promote the presentation of the merits of the action or, stated differently, whether upholding the admissions would practically eliminate any presentation on the merits of the case. The Defendants argue that the deemed admissions would eliminate any presentation on the merits of the case, as evidenced by the fact that the Plaintiff is attempting to use the them to establish the factual bases of his Motion for Partial Summary Judgment.[9]  The Plaintiff does not respond to this argument.

_____

[9]The Defendants also attempt to convince the court that the admissions contradict other facts that have developed in this case. Doc. #15 at 3-4.  The Court has not considered this argument, however, because the Rules of Civil Procedure do not allow a court to excuse an untimely response to a request for

The Court concludes that permitting the Defendants to withdraw the deemed admissions would promote the presentation of the merits of the action, in that some of the admissions are foundational to establishing some of the Plaintiff's claims or the Defendants' defenses.[10] E.g., Doc. #12 at 16 (Ex. 1) (admissions #1 and #2 state that Jackson Township employed both Schade and Winkler on the day in question, facts that are imperative to the state law claims against the Township). Thus, the Defendants have satisfied the first prong of the Rule 36(b) test.

Turning now to the second part of the analysis, the Court considers whether allowing the Defendants to withdraw the admissions would prejudice the Plaintiff in his ability to prosecute the action on the merits or, in other words, whether the Plaintiff would endure special difficulties caused by a sudden need to obtain evidence upon the withdrawal. The Defendants assert that the Plaintiff would not be so prejudiced because he received their responses only sixteen days after the date upon which they were due, and then had six months in which to conduct

---

admissions based on those deemed admissions being contradictory to other facts.

[10]The Court disagrees with the examples cited by the Defendants as being imperative to the presentation of the merits of the case and, in essence, for the same reason, disagrees with the premise of much of the Plaintiff's Motion for Partial Summary Judgment. Both parties point to various purported admissions pertaining to Schade and Winkler, in support of and in opposition to the Plaintiff's Motion for Partial Summary Judgment (which goes only to the claims against Schade and Winkler). E.g., Doc. #12 at 3 (in support of excessive force argument, pointing to admissions that there were less forceful methods available to Schade and Winkler, with which to stop Lawson); Doc. #15 at 3 (same). However, the deemed admissions in question were propounded to Defendant Jackson Township, not to Defendants Schade and Winkler, and Jackson Township cannot admit facts or opinions on behalf of Schade or Winkler. Doc. #12 at 14 (Ex. 1).

discovery.  The Plaintiff does not respond.

The Plaintiff having presented no argument that he would be prejudiced if the court allows the withdrawal of the deemed admissions and the Court having concluded that doing so would promote the presentation of the merits of the action, the Court SUSTAINS the Defendants' Motion to Deem Responses to Plaintiff's Requests for Admission as Timely Served (Doc. #14) and OVERRULES the Plaintiff's Motion to Deem Requests for Admissions Admitted (Doc. #12).


III.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986).  Once the burden of production has so shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations, it

is not sufficient to "simply show that there is some metaphysical doubt as to the

material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the

[unverified] pleadings" and present some type of evidentiary material in support of

its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a

scintilla of evidence in support of his position; the evidence must be such that a jury

could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin,

18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th

Cir. 1992) (citation omitted).  In determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.  If

the parties present conflicting evidence, a court may not decide which evidence to

13

believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## IV.  PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiff bases his Motion for Partial Summary Judgment almost entirely on the facts that he considered to have been admitted, in accordance with Rule 36, as a result of the Defendants' late submission of responses to the Requests for Admissions. Doc. #12 at 3, 9-10  Because the factual underpinnings of that Motion are no longer valid, given the Court's decision, *supra*, to sustain the Defendants' Motion to Deem Responses to Plaintiff's Requests for Admission as Timely Served, the Court OVERRULES the Plaintiff's Motion for Partial Summary Judgment (Doc. #12), without prejudice to renewal, should he have other facts sufficient to support such a motion.

## V.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants move for summary judgment on all of the Plaintiff's claims. Doc. #11.[11]  The Court will begin with an analysis of the claims against Schade and Winkler and will conclude with a consideration of the claims against Chief Turner and Jackson Township.

### A.  Claims against Defendants Schade and Winkler

#### 1.  Excessive Force - Count III

In Count III of his Complaint, the Plaintiff alleges that Defendants Schade and

---

[11]Except for the claim for Negligent Infliction of Emotional Distress, which will be discussed *infra* Section V(A)(5)(b).

Winkler used unreasonable and excessive force against him or failed to intervene and halt the unreasonable and excessive use of force, in violation of the Fourth Amendment. The Plaintiff brings his claim under 42 U.S.C. § 1983.

In their Motion for Summary Judgment, the Defendants assert that they used reasonable force to lawfully detain the Plaintiff, during an emergency. Alternatively, they argue that they are entitled to qualified immunity, because a reasonable officer could have believed that his use of force against such an individual was lawful.[12] The Plaintiff disputes both contentions.

42 U.S.C. § 1983 provides that "any person who, under color of law, deprives another of a right secured by law 'shall . . . be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.'" Arendale v. City of Memphis, 519 F.3d 587, 595 (6th Cir. 2008) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 712-13, 109 S. Ct. 2702 (1989)). There is no

---

[12]Defendants also argue that the conduct of the officers must "shock the conscience" in order to amount to excessive force, given that they were in an emergency situation. They cite County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708 (1998), in support of this argument.

In making this argument, the Defendants misapprehend excessive force analytical standards. The "shocks the conscience" test only applies in Fourteenth Amendment excessive force cases, and an excessive force claim is only analyzed under the Fourteenth Amendment if it is not covered by a specific constitutional provision. Lanman v. Hinson, 529 F.3d 673, 680 (6th Cir. 2008) (citing United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S. Ct. 1219 (1997)). In this case, the Plaintiff's allegations clearly relate to the officers' conduct during a seizure and, thus, the Court must analyze them under the Fourth Amendment's reasonableness standard. Id. ("[T]he Fourth Amendment reasonableness standard generally applies any time a government official seizes a free citizen with the purpose of potentially creating an involuntary custodial relationship with the State.").

question, in the present case, that the officers were acting "under color of law." Thus, the only question for the Court is whether they deprived the Plaintiff of a right secured by law. The Plaintiff argues that the officers violated his rights, under the Fourth Amendment, to be free from excessive force.

Whether an officer's conduct violates the Fourth Amendment depends on whether it was "objectively reasonable," which courts determine "by balancing the nature and quality of the intrusion on [the plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." Ciminillo v. Streicher, 434 F.3d 461, 466-67 (6th Cir. 2006) (citing Tennessee v. Garner, 471 U.S. 1, 8, 105 S. Ct. 1694 (1985) and United States v. Place, 462 U.S. 696, 703, 103 S. Ct. 2637 (1983)). The Sixth Circuit focuses on the test established by the Supreme Court in Graham v. Connor, in balancing these interests, to wit:

> Whether a seizure is reasonable depends on the totality of the circumstances, including 1) the severity of the crime, 2) whether the suspect poses an immediate threat to the safety of the officers or others, and 3) whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. at 467 (citing Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989)). The Appellate Court points out that these factors do not constitute an exhaustive list; rather, "the ultimate question is whether the totality of the circumstances justifies a particular sort of seizure." Id. (quotation omitted).

In the present case, the Defendants do not apply the Graham v. Connor test, but merely assert that the officers' conduct was reasonable, given the emergency situation at hand and the fact that the Plaintiff ignored the officers' orders to stop

17

approaching the fire.[13]   The Plaintiff, on the other hand, argues that there is a

genuine issue of material fact as to each of <u>Graham v. Connor</u> factors.   Specifically,

he argues that it is unclear how "severe" the crime was that he was committing, by

approaching the fire.   Also, the facts do not indicate any "immediacy" given that he

was one-third of a football field away from the fire and was walking when the

officers knocked him violently to the ground.   Furthermore, according to the facts

set forth by the Plaintiff, he offered no resistance nor attempted to escape while he

was on the ground, yet the officers continually exerted extreme physical measures

to restrain him, for approximately twenty minutes.

The Court agrees with the Plaintiff.   In considering the facts and

circumstances giving rise to the Defendants' Motion in the manner most favorable

to the Plaintiff, as the Court must do, the Court concludes that although the

"tackle" of the Plaintiff was not unreasonable under the <u>Graham</u> factors (the Plaintiff

approaching the burning building, his refusal to heed the officers' repeated warnings

to stop, and his attempt to free himself when Defendant Winkler wrapped his arms

---

[13]Based on comments in the Plaintiff's memorandum indicating that he felt
like "his mind was gone" and he was in a "panicked haze", the Defendants also
argue that this case is similar to two cases in which the plaintiffs were disoriented
and acting erratically. Doc. #17 at 3-4 (citing <u>McVay v. Sisters of Mercy Health
Sys.</u>, 399 F.3d 904 (8th Cir. 2005); <u>Wysong v. City of Heath</u>, 2008 U.S. App.
LEXIS 2192 (6th Cir. Jan. 22, 2008)).   The Defendants offer no facts to indicate
that the officers, in this case, noticed that the Plaintiff was disoriented or acting
erratically, however.   Since the officers' impressions of the plaintiffs' altered mental
state was essential to the reasonableness determination in the cited cases, the
cases are not applicable here. <u>E.g.</u>, <u>McVay</u>, 399 F.3d at 908-09 (considering the
officer's impression that the plaintiff lacked mental control, in determining that the
officer's action in tackling the plaintiff was reasonable).

around him, in an attempt to get him to stop), there is a genuine issue of material fact as to whether the officers' conduct in continuing to restrain the Plaintiff in the manner they did was reasonable.

In determining whether means used to restrain persons are unreasonable, the Sixth Circuit has recognized that tackling a suspect can be violative of the Fourth Amendment, if the tackling is followed by the application of additional, unreasonable force.[14] <u>Lyons v. City of Xenia</u>, 417 F.3d 565, 578 (6th Cir. 2005) (noting that tackling can rise to the level of excessive force when "the police did more than just tackle the suspect") (citing <u>Phelps v. Coy</u>, 286 F.3d 295, 298, 302 (6th Cir. 2002) (court found constitutional violation for summary judgment purposes where plaintiff alleged that officers tackled him, hit him, and slammed his head into the floor three times); <u>Barlow v. Ground</u>, 943 F.2d 1132, 1136 (9th Cir. 1991) (police tackled suspect and put him in a punishing "pain compliance hold")).

The Sixth Circuit has recognized that whether an otherwise reasonable tackle becomes unreasonable because of the additional application of excessive force depends on whether, once the suspect is subdued, he presents a threat to the officers or other persons and whether he is compliant or presents a risk of flight. <u>E.g.</u>, <u>Smoak v. Hall</u>, 460 F.3d 768, 783-784 (6th Cir. 2006) (finding genuine issues

---

[14]In analyzing excessive force claims, the Sixth Circuit instructs that it is appropriate to "carve up the incident into segments and judge each on its own terms to see if the officer was reasonable at each stage." <u>Dickerson v. McClellan</u>, 101 F.3d 1151, 1161 (6th Cir. 1996) (quoting <u>Plakas v. Drinski</u>, 19 F.3d 1143 (7th Cir. 1994)).

of material fact as to excessive force and qualified immunity when officer

responded to a handcuffed and compliant individual jumping up after his dog was

shot, by knocking his legs out from under him and throwing him to the pavement

face-first); Phelps, 286 F.3d at 301 (finding that once suspect had been neutralized,

the continual beating of him was recognizably unreasonable); see also Baker v. City

of Hamilton, 471 F.3d 601, 607 (6th Cir. 2006) (finding that plaintiff was not

handcuffed at time he was struck did not preclude finding of unreasonableness,

since he was otherwise compliant; "We have held repeatedly that the use of force

after a suspect has been incapacitated or neutralized is excessive as a matter of

law."); Tapp v. Banks, 2001 U.S. App. LEXIS 547, *17 (6th Cir. Jan. 10, 2001)

("While it is objectively reasonable that an officer would be both agitated and highly

apprehensive after a dangerous, lengthy high-speed pursuit . . ., it is not objectively

reasonable for an officer dealing with an essentially compliant person, to strike the

person's legs twelve to fifteen times in the absence of resistance."); Collin v.

Stephenson, 2002 U.S. Dist. LEXIS 21573, **28-29 (S.D. Ohio 2002) (questioning

use of a pain compliance hold on suspect, as well as officer violently throwing

suspect into back seat of cruiser when she was hand-cuffed and not resisting); Papp

v. Snyder, 81 F. Supp. 2d 852, 856-57 (N.D. Ohio 2000) (finding genuine issue of

material fact as to whether use of choke hold and carotid sleeper hold to subdue

suspect were excessive).

 In this case, there is a genuine issue of material fact as to whether the

manner and timing of the officers' continual restraint of the Plaintiff (continuing to

20

push the Plaintiff's face into the ground and wrenching his arm behind his back until his hand turned black and purple, for twenty minutes), while he offered no resistance, was objectively unreasonable, particularly after the Plaintiff's daughter arrived and the Plaintiff seemingly conveyed to the officers that he was at peace because he knew his daughter was safe.  At this point, the Plaintiff arguably did not pose an immediate threat to the safety of the officers or others and was not actively resisting their restraint.[15]  Because there is a genuine issue of material fact on the issue of excessive force, the Court now turns to the question of qualified immunity.

In addressing qualified immunity claims, the Sixth Circuit points to the Supreme Court's decision in Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), in stating that courts must initially consider whether "the facts alleged show the officer's conduct violated a constitutional right" and, if so, "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." Lyons, 417 F.3d at 571.[16]  As just noted, the Court has

---

[15]The Defendants also argue that they used reasonable force to detain the Plaintiff, given his resistance to the officers' efforts to restrain him. Doc. #11 at 7. As noted in the Facts Section, *supra* note 6, the parties have offered contradictory evidence on whether the Plaintiff offered resistance.  There being a genuine issue of fact, on this point, and the Court being obliged to interpret the facts in the light most favorable to the Plaintiff, the argument does nothing to bolster the Defendants' argument on summary judgment.

[16]The Plaintiff attempts to argue that once a court determines that there is a genuine issue of material fact on the issue of excessive force, that there is similarly an automatic genuine issue of material fact on the issue of qualified immunity. Doc. #16 at 12-13.  Sixth Circuit case law makes it clear that this is not the case. Lyons, 417 F.3d at 572 ("Although precedent 'establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under

concluded that the alleged facts show that there is a genuine issue of material fact as to whether the officers' conduct violated the Plaintiff's rights, under the Fourth Amendment, to be free from excessive force. The Court, furthermore, concludes that based on Sixth Circuit case law, as set forth above, the right to be free from the gratuitous use of force, once a plaintiff is subdued and no longer presents a risk of flight or a danger to the officers or others, is clearly established. E.g., Lyons, 417 F.3d at 578 (noting that tackling can rise to the level of excessive force when the police exert excessive force after an otherwise lawful tackle); Tapp, 2001 U.S. App. LEXIS 547, *17 (finding that it is not objectively reasonable for an officer dealing with an essentially compliant person, to repeatedly strike the person's legs, in the absence of resistance). Thus, the Court OVERRULES the Defendants' Motion for Summary Judgment (Doc. #11), on Count III.

### 2. Assault and Battery - Counts I and II

The Plaintiff also alleges that the officers committed acts of assault and battery, in conjunction with the aforementioned physical altercation. The Sixth Circuit and Ohio courts recognize that if an officer uses excessive force, he is also liable for assault and battery. Baker v. City of Hamilton, 471 F.3d 601, 609 (6th Cir. 2006) ("If an officer uses more force than is necessary to make an arrest and

---

objective standards of reasonableness,' that is 'not enough' to deny qualified immunity because 'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense.'") (quoting Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 598 (2004)).

protect himself from injury, he is liable for assault and battery . . . .") (quoting <u>City of Cincinnati v. Nelson</u>, 1975 Ohio App. LEXIS 7443, *5 (Ohio 1st App. Dist., May 5, 1975)).  Thus, the Defendants are not entitled to summary judgment, on this issue.

The Defendants contend, however, that even if there is a genuine issue of material fact on the issue of assault and battery, they are entitled to immunity under Ohio Revised Code Chapter 2744.  The pertinent part of that statute provides that an employee of a political subdivision is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . .

Ohio Rev. Code Ann. § 2744.03(A)(6).  The parties, in this case, dispute whether the officers' actions were carried out with "malicious purpose, in bad faith, or in a wanton or reckless manner."[17]  The Sixth Circuit has determined that where facts

---

[17]Judge Dlott, of this District, has previously expounded on these standards as follows:

> "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another.  "Wanton misconduct" is the

23

indicate that officers used gratuitous force in making an arrest, summary judgment on the issue of statutory immunity is unwarranted. Baker, 471 F.3d at 609-10 (finding that evidence that the officer struck plaintiff gratuitously while arresting him was "sufficient to establish a genuine issue of material fact as to whether Officer Taylor acted maliciously or in bad faith" in making the arrest). The Court, in this case, agrees that the facts, as viewed in the Plaintiff's favor, indicate that there is a genuine issue of material fact, on this point.

Having found genuine issues of material fact, both as to the assault and battery claims and the question of statutory immunity, the Court OVERRULES the Defendants' Motion for Summary Judgment (Doc. #11), on Counts I and II.

### 3. Substantive Due Process - Count IV

In Count IV of his Complaint, the Plaintiff alleges that the officers violated his rights, under the Fourteenth Amendment, because they exhibited deliberate indifference to his serious medical needs. In support thereof, he points to the following: (1) that Defendant Winkler called him an "SOB" when he was in the police cruiser, and (2) that the officers "totally ignor[ed] the potential for injury that a frail preacher could have after being slammed to the ground and putting a knee in his back and face in the ground for twenty minutes." Doc. #16 (Pl.'s Mem. Opp'n)

---

failure to exercise any care whatsoever.

Morrison v. Bd. of Trs., 529 F. Supp. 2d 807, 835 (S.D. Ohio 2007) (citing Cook v. Cincinnati, 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814 (Ohio App. 1995)).

at 13.

As to the second part of this allegation, the Defendants properly point out that because this conduct (putting a knee in his back and his face in the ground) occurred as a part of a seizure, this claim is covered by the Fourth Amendment (as analyzed above), rather than the Fourteenth Amendment. Lanman v. Hinson, 529 F.3d 673, 680 (6th Cir. 2008) ("[I]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quoting United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S. Ct. 1219 (1997)).

With regard to the Plaintiff's contention that Defendant Winkler displayed a deliberate indifference to his serious medical needs by calling him an "SOB" when he was in the police vehicle (Plaintiff had caught Winkler's attention to tell him he was feeling ill when Winkler said, "you SOB, if you throw up in my cruiser it'll be the last cruiser you throw up in"), the Plaintiff has simply not pointed to sufficient evidence to create a genuine issue of material fact on this point.

The Supreme Court has recognized that an officer may be liable, for a violation of the Fourteenth Amendment, by showing "deliberate indifference" to a substantial risk of serious harm to persons who have been injured while being apprehended by the police. Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979 (1983). "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the plaintiff's] health and safety.

25

Watkins v. City of Battle Creek, 273 F.3d 682, 686 (6th Cir. 2001) (citing Farmer v. Brennan, 511 U.S. 825, 835-37, 114 S. Ct. 1970 (1994)). The Court agrees with the Defendants that, in this case, the officer's response, while callous, did not rise to a level of deliberate indifference, since the Plaintiff points to no evidence to indicate that the officer knew of a substantial risk of serious harm to the plaintiff's health.

Having found no genuine issue of material fact on the Plaintiff's substantive due process claim, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #11), on Count IV.


### 4.    Cruel and Unusual Punishment - Count V

As the Defendants properly point out, the Eighth Amendment's prohibition against cruel and unusual punishment does not apply to alleged misconduct occurring prior to a conviction. Bass v. Robinson, 167 F.3d 1041, 1049 (6th Cir. 1999) (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S. Ct. 1401, 1412 (1977)). Because the facts in the present case occurred prior to a conviction, there is no genuine issue of material fact on this point and the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #11), on Count V.

5.     <u>Intentional/Reckless or Negligent Infliction of Emotional Distress -</u>
<u>Count VI</u>

As his final claim for relief against the two officers, the Plaintiff alleges that

the officers acted intentionally, recklessly or negligently in tackling and restraining

the Plaintiff and that they knew or should have known that their actions would

result in serious emotional distress to the Plaintiff.  The Court will first consider the

claim for intentional or reckless infliction of emotional distress and then turn to the

claim for negligent infliction of such.


a.     <u>Intentional/Reckless Infliction of Emotional Distress</u>

Intentional or reckless infliction of emotional distress occurs where one

person "by extreme and outrageous conduct intentionally or recklessly causes

serious emotional distress to another." <u>Treadway v. Free Pentecostal Pater Ave.</u>

<u>Church of God, Inc.</u>, 2008 Ohio 1663, **12-13 (Ohio 12th App. Dist. Apr. 7,

2008) (citing <u>Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen &</u>

<u>Helpers of Am.</u>, 6 Ohio St.3d 369, 453 N.E.2d 666, syllabus (1983)).  To maintain

a claim for intentional infliction of emotional distress, a plaintiff must set forth proof

of the following elements:

(1)     the defendant intended to cause emotional distress, or knew or
should have known his actions would result in serious
emotional distress;

(2)     the defendant's conduct was so extreme and outrageous that it
went beyond all possible bounds of decency, and can be
considered completely intolerable in a civilized community;

(3)     the defendant's actions proximately caused psychological injury
        to the plaintiff; and

(4)     the plaintiff suffered serious mental anguish of a nature no
        reasonable person could be expected to endure.

Bauman v. Bob Evans Farms, Inc., 2007 Ohio App. LEXIS 121, *14 n.5 (Ohio 10th

App. Dist. Jan. 16, 2007) (citation omitted).  In the present case, the Defendants

argue that the Plaintiff has pointed to no evidence to support the second prong of

this test (extreme and outrageous conduct), while the Plaintiff asserts that the

officers' conduct in restraining him as they did is sufficiently outrageous to satisfy

this requirement.

    With respect to the necessity that the alleged conduct be "extreme and

outrageous," the Ohio Supreme Court points to the Restatement Second of Torts,

as follows:

        It has not been enough that the defendant has acted with an intent
        which is tortious or even criminal, or that he has intended to inflict
        emotional distress, or even that his conduct has been characterized by
        "malice," or a degree of aggravation which would entitle the plaintiff
        to punitive damages for another tort.  Liability has been found only
        where the conduct has been so outrageous in character, and so
        extreme in degree, as to go beyond all possible bounds of decency,
        and to be regarded as atrocious, and utterly intolerable in a civilized
        community.  Generally, the case is one in which the recitation of the
        facts to an average member of the community would arouse his
        resentment against the actor, and lead him to exclaim, "Outrageous!"

Yeager v. Local Union 20, Teamsters, 6 Ohio St. 3d 369, 374-75, 453 N.E.2d 666

(1983) (citing Restatement (Second) of Torts § 46 (1965)).  Ohio courts have found

conduct similar to that alleged in the present case sufficient to create a genuine

issue of material fact as to whether the officers' conduct was extreme and

28

outrageous. <u>E.g.</u>, <u>Clutters v. Sexton</u>, 2007 U.S. Dist. LEXIS 84025, **56-57 (S.D. Ohio Nov. 2, 2007) (denying summary judgment where there was issue as to whether victim's injury was sustained when he slipped and fell or, instead, an officer pushed him); <u>Burr v. Perkins</u>, 2006 U.S. Dist. LEXIS 52442, **27-28 (S.D. Ohio July 31, 2006) (overruling summary judgment motion where facts indicated officer had used excessive force in the method used to tackle plaintiff and in subsequently slamming him onto the hood of a car).  This Court similarly concludes that, in interpreting the facts most strongly in the Plaintiff's favor, there is a genuine issue of material fact as to whether the officers' conduct was extreme and outrageous, given that they continued to forcibly constrain the Plaintiff for twenty minutes, while he showed indications of injury (his hand turned black and purple due to his arm being wrenched behind his back) and he offered no resistance, especially for the last ten minutes when his daughter was there and the officers could have arguably been aware that he no longer posed a risk of flight or danger to himself or others.

As to the question of statutory immunity under Ohio Revised Code § 2744.03(A), the Court concludes that there is genuine issue of material fact, on immunity for the intentional infliction of emotional distress claim, for the reasons articulated above for the assault and battery claims. <u>See</u> <i>supra</i> Section V(A)(2).[18]

---

[18]The Defendants do not actually argue that they are entitled to statutory immunity, but rather explain that there is no exception to statutory immunity for intentional tort claims, a legal conclusion with which the Plaintiff does not argue. <u>See</u> Doc. #11 at 11; Doc. #17 at 7.

Having found genuine issues of material fact, both as to the intentional infliction of emotional distress claim and the question of statutory immunity, the Court OVERRULES the Defendants' Motion for Summary Judgment (Doc. #11), on that part of Count VI that alleges intentional infliction of emotional distress.

b.   Negligent Infliction of Emotional Distress

Although the Defendants purport to move for summary judgment on all of the Plaintiff's claims, they do not actually address the Plaintiff's claim for negligent infliction of emotional distress.  Thus, this claim remains.[19]

6.   Summary of Claims Remaining Against Defendants Schade and Winkler

At this juncture, the following claims against Defendants Schade and Winkler are no longer viable:

•    Substantive Due Process - Count IV

•    Cruel and Unusual Punishment - Count V

While the following claims, against these two Defendants, remain:

---

[19]Plaintiff should consider whether he wishes to maintain this claim in light of prevailing Ohio law. E.g., Potter v. RETS Tech Ctr. Co., 2008 Ohio App. LEXIS 858, **12-13 (Ohio 2nd App. Dist. Mar. 7, 2008) (noting that "[c]ases in which claims for relief for negligent infliction of emotional distress have been held to lie have . . . involved distress suffered by a bystander who witnessed a sudden and shocking event, such as an auto accident, that did or reasonably could result in injury to other persons" and that emotional distress resulting from assault claim was compensable as part of the separate assault claim) (citing Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983)).

- Assault and Battery - Counts I and II

- Excessive Force - Count III

- Intentional/Reckless or Negligent Infliction of Emotional Distress - Count VI

Having fully addressed the claims against Defendants Schade and Winkler, the Court now turns to an analysis of the Defendants' Motion for Summary Judgment, as it pertains to the claims against Chief Turner and Jackson Township.

B.    Claims against Chief Turner - Supervisor Liability

The Plaintiff also brings Counts III-VI against Chief of Police Turner, as the commanding officer of Defendants Schade and Winkler. Doc. #2 (Compl.) ¶ 5. The Defendants assert that they are entitled to summary judgment on all of the claims against Defendant Turner, because the only way the Plaintiff can establish Section 1983 supervisor liability against Turner is to show that he was personally responsible for the alleged constitutional deprivations and this they have not done. Doc. #11 at 12-13. The Plaintiff does not respond.

The Defendants are correct. When analyzing Section 1983 claims brought against a supervisor, in his individual capacity,[20] courts must bear in mind that Section 1983 liability cannot be imposed under a theory of *respondeat superior*. Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 81 (6th Cir. 1995) (citing

---

[20]The Plaintiff also brings claims against Turner, in his official capacity, but those will be analyzed as claims against the municipality, in the following discussion.

Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691, 98 S. Ct. 2018

(1978)).  As explained by the Sixth Circuit,

> [I]n order for § 1983 liability to attach to an individual municipal
> supervisor, there must be a showing that the supervisor encouraged
> the specific incident of misconduct or in some other way directly
> participated in it.  At a minimum, a § 1983 plaintiff must show that a
> supervisory official at least implicitly authorized, approved or
> knowingly acquiesced in the unconstitutional conduct of the offending
> subordinate.

Petty v. County of Franklin, 478 F.3d 341, 349 (6th Cir. 2007) (quoting Taylor, 69

F.3d at 81). Therefore, proof of personal involvement is essential for a supervisor to

incur personal liability, under Section 1983.

Because the Plaintiff has pointed to no facts, in this case, to indicate that

Chief Turner "implicitly authorized, approved or knowingly acquiesced in the

unconstitutional conduct" there is no genuine issue of material fact, on the issue of

supervisor liability for the Plaintiff's federal claims.

As to the state law claims against Chief Turner, the Defendants argue that

Turner is immune from suit, citing Jones v. City of Cincinnati, 2006 U.S. Dist.

LEXIS 75430, *47 (S.D. Ohio Oct. 17, 2006), which in turn relies on Ohio Revised

Code § 2744.03.  The Plaintiff does not respond.  As previously discussed,

immunity extends to employees of political subdivisions under Ohio Revised Code

§ 2744.03(A)(6), absent proof of one of the three delineated exceptions.[21]  The

---

[21]The three exceptions are as follows:  when the employee's acts are
"manifestly outside the scope of the employee's employment", when those act are
"with malicious purpose, in bad faith, or in a wanton or reckless manner", or when
liability is otherwise expressly imposed by the Ohio Revised Code. Ohio Rev. Code
Ann. § 2744.03(A)(6).

Plaintiff having set forth no facts to indicate that Turner falls within any of the stated exceptions, statutory immunity applies.

There being no genuine issue of material fact as to Turner's liability for either the federal or state claims, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #11), as to all claims against Defendant Turner.

C.    Claims against Jackson Township - Municipal Liability

The Plaintiff also brings Counts III-VI against Jackson Township.[22]  In their Motion for Summary Judgment, the Defendants contend that the Plaintiff has pointed to no municipal policy, practice or procedure that allegedly caused the Plaintiff's injury, nor has he set forth facts to demonstrate that the Township was "deliberately indifferent" in training or supervising its officers, so as to incur liability under Section 1983. Doc. #11 at 13-14.  The Plaintiff does not respond.

As the Defendants correctly state, there are two related ways in which to hold municipalities liable, under Section 1983, to wit:  (1) demonstrating that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights, or (2) showing that the municipality had a custom or policy of systematically failing to train its employees adequately, such that the failure amounts to "deliberate indifference" and represents a proximate

_____

[22]As previously noted, the Plaintiff brings a claim against Chief Turner, in his official capacity.  Because an official capacity suit against an employee of a governmental entity is a suit against the entity itself, the Court will treat Turner, in his official capacity, as being one and the same as Jackson Township. See Kentucky. v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099 (1985).

cause of the Plaintiff's injuries.

As to policies and practices municipal liability, under § 1983, the seminal case is <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018 (1978). The Sixth Circuit explains the <u>Monell</u> rule, as follows:

> A municipality cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory. Rather, liability will attach only where the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights.

<u>Powers v. Hamilton County Pub. Defender Comm'n</u>, 501 F.3d 592, 607 (6th Cir. 2007) (citing <u>Monell</u>, 436 U.S. at 691, 694). Not only must a plaintiff demonstrate that the defendant was the "moving force" behind the constitutional deprivation, the plaintiff must generally do so by setting forth proof of more than a single incident of unconstitutional activity. <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24, 105 S. Ct. 2427 (1985). Thus, in order to survive summary judgment on a policies and practices claim under § 1983, a plaintiff must show that the municipality was the "moving force" behind the alleged constitutional violation. <u>Monell</u>, 436 U.S. at 691, 694. Also, a plaintiff must either show that the alleged policy is itself unconstitutional or put forth "considerably more proof than [a] single incident" to establish municipal liability. <u>Tuttle</u>, 471 U.S. at 824.

A related means to hold a municipality liable under § 1983 is to show that the municipality had a custom or policy of systematically failing to train its employees adequately, such that the failure "amounts to 'deliberate indifference' on behalf of [the state entity] toward its inhabitants." <u>Revis v. Meldrum</u>, 489 F.3d

34

273, 288 (6th Cir. 2007) (quotation omitted). In explaining how a plaintiff satisfies the deliberate indifference standard, the Sixth Circuit cites the Supreme Court's holding in City of Canton v. Harris, in stating that the plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006) (quoting City of Canton, 489 U.S. 378, 390, 109 S. Ct. 1197 (1989)). Further, the plaintiff must demonstrate that there is a "causal link between the policy and the unconstitutional deprivation," in order for the deprivation to be actionable. Arledge v. Franklin County, 509 F.3d 258, 264 (6th Cir. 2007) (citing Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994)). In sum, then, to overcome a motion for summary judgment on a failure to train claim, a plaintiff must show: "(1) that [the training program] is inadequate; (2) that the inadequacy is the result of deliberate indifference; and (3) that the inadequacy is 'closely related to or actually caused the plaintiff's injury.'" Summerland v. County of Livingston, 2007 U.S. App. LEXIS 21045, *25 (6th Cir. 2007) (quoting Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) and citing City of Canton, 489 U.S. at 390).

In the present litigation, the Court agrees with the Defendants that the Plaintiff has pointed to no evidence to indicate either that Jackson Township engaged in a "policy or custom" that was the "moving force" behind the deprivation of the Plaintiff's rights or that it had a custom or policy of

35

systematically failing to train its employees adequately, such that the failure amounts to a "deliberate indifference". There is, therefore, no genuine issue of material fact as to the question of municipal liability, for the Plaintiff's federal claims against Jackson Township.

As to the state law claims, the Defendants argue that Jackson Township is immune from suit under Ohio Revised Code § 2744.02. The Plaintiff does not respond. As the Defendants suggest, § 2744.02 grants political subdivisions immunity, with certain exceptions that are not applicable here, against "civil action[s] for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code Ann. § 2744.02(A)(1). The Court agrees that the Township is immune from suit for the Plaintiffs' state law claims, under § 2744.02.

Because there is no genuine issue of material fact as to the question of municipal liability, for the Plaintiff's federal or state claims against the Township, the Court SUSTAINS the Defendants' Motion for Summary Judgment (Doc. #11), as to all claims against Jackson Township.


VI.    CONCLUSION

The Defendants' Motion to Deem Responses to Plaintiff's Requests for Admission as Timely Served (Doc. #14) is SUSTAINED. The Plaintiff's Motion to Deem Requests for Admissions Admitted (Doc. #12) is OVERRULED. The

36

Plaintiff's Motion for Partial Summary Judgment (Doc. #12) is OVERRULED,

without prejudice to renewal.

The Defendants' Motion for Summary Judgment (Doc. #11) is SUSTAINED,

in part, for the following claims:

- As to Defendants Schade and Winkler:  Count IV (Substantive Due Process) and Count V (Cruel and Unusual Punishment)

- As to Defendant Turner:  all claims

- As to Defendant Jackson Township:  all claims

The Defendants' Motion for Summary Judgment (Doc. #11) is OVERRULED,

in part, for the following claims:

- As to Defendants Schade and Winkler:  Counts I and II (Assault and Battery), Count III (Excessive Force) and Count VI (Intentional/Reckless Infliction of Emotional Distress)

Furthermore, as noted herein, the Defendants did not move for summary judgment

on the Plaintiff's claim for Negligent Infliction of Emotional Distress (Count VI), so

that claim remains viable.


December 19, 2008


/s/   Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:
Counsel of record